IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| GEC, LLC, | ) |
|                 Plaintiff | ) Case No. 18-CV-_____ |
| v. | ) **CLAIM AGAINST PERFORMANCE BOND** |
| ARGONAUT INSURANCE COMPANY | ) **JURY TRIAL DEMANDED** |
|                 Defendant | ) |

## COMPLAINT

Plaintiff complains against defendant as follows:

1. This Court has jurisdiction hereof pursuant to 28 U.S.C. § 1332. There is complete diversity of citizenship as more fully shown below. The amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00.

2. Plaintiff, GEC, LLC ("GEC"), is a limited liability company organized under the laws of the Virgin Islands and having its principal place of business within the Virgin Islands. All of its Members are citizens of the Virgin Islands.

3. Alpha Technologies Services, Inc. ("Alpha") is, upon information and belief, a corporation organized under the laws of the state of Nevada and having its principal place of business in the state of Washington.

4. Defendant, Argonaut Insurance Company ("Argonaut") is a corporation organized under the laws of the state of Illinois and having its principal place of business in the state of Texas.

5. On or about December 31, 2014, GEC, as general contractor, executed a contract (the "General Contract") with JDC-Anna's Hope Associates, LLLP ("Owner"), as Owner, for construction of the Anna's Hope Affordable Housing Apartments at 110F Estate Anna's Hope, St. Croix, Virgin Islands (the "Affordable Housing Project").

6. On or about April 16, 2015, GEC, as general contractor, executed Change Order No. 1 ("Change Order One") to the General Contract with Owner, adding to the scope of

work under the General Contract, *inter alia*, the procurement and installation of a solar/diesel hybrid electrical generation system (the "Micro-Grid") as previously proposed and to be designed by Alpha.

7. Change Order One incorporated, by reference, a written proposal from Alpha to Owner dated on or about February 17, 2015 (the "Alpha Micro-Grid Proposal") describing with particularity the product that Alpha promised to build for Owner to provide off-the-grid continuous electrical service to the Affordable Housing Project.

8. The Alpha Micro-Grid Proposal was presented by Alpha to both Owner and GEC in approximately February, 2015, with the intent to induce Owner and GEC to employ Alpha to design, construct, and install the Micro-Grid at the Project on a turnkey basis. The Alpha Micro-Grid Proposal contained certain affirmative representations of fact, including, without limitation:

    a. That Alpha had a "reputation for unparalleled performance for Total Power Solutions."
    b. That Alpha had "developed a solution" for the Project that would provide a reliable source of off-grid electrical power.
    c. That "Alpha Energy was able to come up with the highest renewable energy penetration possible, minimizing the amount of diesel generator runtime on the facility and providing for a green living culture throughout the complex."
    d. That "Alpha engineers use best-in-class components to ensure the lowest total ownership cost for customers."
    e. That "The proposed Micro-Grid solar system was engineered to provide power for provided loads and offset the majority of the facility's energy requirements during sun hours, with excess generation coming from a redundant set of generators. The system as a whole will have redundancy built in, with three levels of generating possibilities, and as such, the power supply to the facility will be very reliable."
    f. That "The diesel generator is a great fit with the lithium ion battery pack due to the running characteristics."
    g. That when installed the Micro-Grid would provide all power to the Project, with approximately 90% solar and 10% by diesel generation.
    h. That: "System shipment will be confirmed after design approval and is estimated to be completed in a 3-4 month time frame once final engineering has been approved by Jackson Development and financing is in place. A full project schedule will accompany the engineering documentation for sign off,

        and will be based on vendor lead times at time of order and standard construction and logistics schedules."

    i. That: "All final designs will be reviewed and stamped by a third party engineering firm prior to presentation to Jackson Development."

9. The cited representations of fact within the Alpha Micro-Grid Proposal, as described above, were knowingly and/or negligently false when made.

10. Change Order One required GEC to retain Alpha as a subcontractor specifically for the purpose of design, permitting, construction, and installation of the Micro–Grid as more fully shown and described in the Alpha Micro-Grid Proposal.

11. On or about July 7, 2015, GEC and Alpha executed a subcontract whereby Alpha agreed to furnish all labor, services, equipment, and materials for the scope of work contained in Change Order One (the "Micro-Grid Subcontract"). The cost of the Micro-Grid Contract, as amended, was $1,685,040.00.

12. In defining Alpha's scope of work, the Micro-Grid Subcontract incorporated by reference and attached Change Order One, which incorporated the Alpha Micro-Grid Proposal.

13. Under the Micro-Grid Subcontract Alpha, warranted "that it and its agents and sub-contractors have the necessary expertise and technical and legal expertise to perform the work under the contract plans and specifications and all applicable laws, rules and regulations of the United States and the United States Virgin Islands concerning the work/materials furnished hereby …"

14. Under the Micro-Grid Subcontract, Alpha *inter alia*, acknowledged that "GEC is relying on such expertise, knowledge and compliance by the Supplier/Subcontractor in the performance of the work or furnishing of the materials …"

15. GEC did, in fact, reasonably rely upon the representations of Alpha as contained in the Alpha Micro-Grid Proposal and the Micro-Grid Subcontract, including the specific representations that Alpha possessed the necessary experience, competence, and expertise to design, build, and install a working Micro-Grid System as described in the Alpha Micro-Grid Proposal and as required by the Micro-Grid Subcontract.

*GEC, LLC v. Argonaut Insurance Company*, SX-18-CV-\_\_\_\_\_
**Complaint**
Page 4 of 9

16. Alpha's representations that Alpha possessed the necessary experience, competence, and expertise to design, obtain permits for, build, and install a working Micro-Grid System as required by the Micro-Grid Subcontract were knowingly and/or negligently false when made.

17. Upon information and belief, as of the date of the Micro-Grid Subcontract, Alpha had never before designed, built, or installed a working Micro-Grid System remotely similar to the project described in the Alpha Micro-Grid Proposal or the work it promised to perform under the Micro-Grid Subcontract.

18. The misrepresentations of Alpha's experience, competence, and expertise, as set forth in the Alpha Micro-Grid Proposal and the Micro-Grid Subcontract, were intended to induce and did induce Owner and GEC to unknowingly take on the risks of Alpha's incompetence and ineptitude about which they had no prior notice and about which they were negligently or intentionally misled by Alpha.

19. Had GEC known that many of the material representations of the Alpha Micro-Grid Proposal were untrue, and that Alpha lacked the necessary experience, competence, and expertise to design, build, and install a working Micro-Grid System as required by the Micro-Grid Subcontract, GEC would not have executed Change Order One, would not have engaged Alpha to perform the work under the Micro-Grid Subcontract, would have recommended that Owner not do business with Alpha, and would have sought (if requested by Owner) to find a competent supplier of micro-grid hybrid power systems to meet the Owner's needs.

20. Under the Micro-Grid Subcontract, Alpha, *inter alia*, was responsible for providing "written start up, commissioning, and long term operating performance standards for the Micro Grid System that are satisfactory to the Owner for purposes of measuring the efficacy of the Micro Grid System after the physical installation of the Micro System under this Subcontract, satisfactory compliance with which shall be the exclusive responsibility of the Owner and the Subcontractor."

21. On or about May 27, 2015, Argonaut issued Performance Bond No. SUR0028570 (the "Performance Bond") in the penal sum of One Million Six Hundred Fifty Two Thousand Dollars ($1,652,000.00), whereby Argonaut, as surety, guaranteed Alpha's performance under the Micro-Grid Subcontract subject to the terms and conditions therein.

*GEC, LLC v. Argonaut Insurance Company*, SX-18-CV-_____
**Complaint**
Page 5 of 9

22. Under the Micro-Grid Subcontract, Alpha, inter *alia*, was responsible for timely completing, commissioning, and delivering to the Owner a fully operational, lawfully permitted, and reliable Micro-Grid System on a "turnkey" basis.

23. GEC paid all of Alpha's pay requests submitted prior to September 30, 2016, in the total amount of $327,096.00.

24. Alpha has failed and refused to timely perform its obligations under the Micro-Grid Subcontract and has failed to deliver an operating Micro-Grid System capable of producing electrical power as promised in the Alpha Micro-Grid Proposal. Alpha's failures to meet its obligations under the Micro-Grid Subcontract include, without limitation:

    a. Unexcused failure to complete the work in accordance with the completion date of the Subcontract.
    b. Failure to prosecute the work with promptness and diligence.
    c. Failure to provide adequate qualified on-site supervision.
    d. Failure to provide adequate qualified on-site manpower.
    e. Failure to comply with all Subcontract warranties.
    f. Failure to provide all materials and perform all items within Alpha's scope of work under the Subcontract.
    g. Failure to timely provide design documentation for critical system components and site infrastructure.
    h. Failure to timely prepare and submit permit applications.
    i. Failure to obtain local clearance for material shipments through U.S. Customs and Virgin Islands Tax Authorities.
    j. Failure to pay all freight, excise tax, duties and/or other fees for Alpha materials delivered to St. Croix.
    k. Failure to provide necessary shipping documentation for delivery of Alpha materials to St. Croix.
    l. Failure to provide sound attenuation for Alpha Micro-Grid components.
    m. Failure to provide Micro-Grid design in conformance with the designs provided by the Project Architect and Electrical Engineer.
    n. Failure to provide local transportation for Alpha materials to the construction site.
    o. Failure to provide local storage for Alpha materials pending installation.
    p. Failure to provide for removal of Alpha construction debris.
    q. Failure to provide material handling equipment for Alpha materials on site.

    r. Failure to provide initial electrical designs and components in compliance with the applicable Virgin Islands Electrical Code.
    s. Failure to timely communicate with GEC regarding Alpha progress and scope of work.
    t. Failure to complete fire protection systems.
    u. Failure to protect work in advance of known hurricane threat.
    v. Failure to timely coordinate commissioning criteria with Project Owner.
    w. Refusal to comply with Project Owner approved commissioning criteria.
    x. Failure to provide contract compliant Micro-Grid diesel generators.
    y. Refusal to provide contract compliant Micro-Grid diesel generator permits.

25. In the course of completing the General Contract, and in an attempt to hasten Alpha's performance of the Micro-Grid Subcontract, GEC performed work and provided materials within Alpha's scope of work under the Micro-Grid Subcontract, including, without limitation:

    a. Revised roof panel layouts.
    b. Provided and installed Micro-Grid electrical conduits.
    c. Provided supervision for correction to electrical design and installation to comply with Virgin Islands Electrical Code.
    d. Provided site supervision for Alpha sub-subcontractors in absence of any Alpha supervisory personnel.
    e. Designed layout of foundation pads for Micro-Grid components after repeated failure or refusal by Alpha to provide such designs.
    f. Paid ocean freight for Alpha materials.
    g. Provided administrative services for shipping Alpha materials to the Virgin Islands and to clear materials from U.S. Customs and Virgin Islands Tax Authorities.
    h. Provided equipment and labor for material handling in storage and on site.
    i. Provided storage for Alpha material pending installation.
    j. Provided local transportation for Alpha material from port of entry to project site.
    k. Paid fees for application and issuance of permits.
    l. Provided site survey work for layout of Micro-Grid components.
    m. Constructed sound attenuation wall for Alpha installed equipment.
    n. Corrected solar racking to comply with the Virgin Islands building code.

26. Alpha is indebted to GEC for the value of all work and materials performed and provided to the Project that were in Alpha's scope of work.

*GEC, LLC v. Argonaut Insurance Company*, SX-18-CV-_____
**Complaint**
Page 7 of 9

27. In the course of its attempted performance of the Micro-Grid Subcontract, Alpha negligently damaged roof membranes and other work installed by GEC and/or other subcontractors, requiring GEC to perform repairs at substantial expense to GEC.

28. In the course of testing the operation of the Micro-Grid Plaintiff negligently, and in breach of contract and warranty, damaged GEC supplied transformer and switchgear equipment, for which GEC has incurred costs to repair.

29. The reasonable value of the work and materials delivered by Alpha to the Affordable Housing Project is approximately zero or less than zero.

30. As a consequence of Alpha's failure to timely deliver to the Owner a fully operational, lawfully permitted, and reliable Micro-Grid System on a "turnkey" basis, GEC has been compelled to expend substantial time and effort in attempting to achieve satisfactory completion of the Micro-Grid Subcontract, all at substantial expense to GEC.

31. As a foreseeable and direct consequence of Alpha's failure to timely deliver to the Owner a fully operational, lawfully permitted, and reliable Micro-Grid System on a "turnkey" basis, GEC has been compelled to connect the Affordable Housing Project to the VIWAPA electrical grid and pay for commercial electrical service pending satisfactory delivery by Alpha of the Micro-Grid System or, alternatively, the construction of a functioning system by a competent supplier of such systems. Such expenses are continuing and ongoing.

32. On or about January 27, 2017, GEC provided Notice of Consideration of Declaring Default to Argonaut as provided for in Section 3.1 of the Performance Bond.

33. On or about July 23, 2018, Alpha being in material and continuing default of its obligations under the Micro-Grid Subcontract, GEC provided to Alpha and Argonaut notice of default and termination of the Micro-Grid Subcontract.

34. On or about August 21, 2018, GEC notified Argonaut of its agreement to pay the balance of any monies due under the Micro-Grid Subcontract to Argonaut or a contractor selected by Argonaut, as provided for in Section 3.3 of the Performance Bond.

35. Argonaut wrongfully denied any liability to GEC under the Performance Bond and refused performance or payment as required by the Performance Bond.

36. Argonauts denial of GEC's claim under the Performance Bond was a breach of the performance bond and was in bad faith in the following particulars (without limitation):

    a. Argonaut failed to adequately investigate GEC's claim and Alpha's failure to perform the Micro-Grid Subcontract;
    b. Argonaut lacked any reasonable or arguable basis for denial of GEC's claim under the Performance Bond;
    c. Argonaut intentionally refused to honor its obligations under the performance bond for dishonest purposes and motivated by ill will; and/or
    d. Argonaut acted with reckless indifference to the rights of GEC, with knowledge that its failure to perform has and will compound damages to GEC for Alpha's breach of the Subcontract.

**WHEREFORE,** Plaintiff demands judgment against Defendant as follows:

A. Actual, direct, indirect, consequential, and punitive damages as may be proved at trial;

B. Pre-judgment and post-judgment interest on all such monetary relief;

C. An award of costs, including all fees and expenses; and

D. Such further relief as may be authorized at law or equity

**A JURY TRIAL IS DEMANDED ON ALL CLAIMS**

*GEC, LLC v. Argonaut Insurance Company*, SX-18-CV-\_\_\_\_\_
**Complaint**
Page 9 of 9

                              Respectfully submitted,

                              HUNTER & COLE
                              Attorneys for GEC, LLC.

DATED: November 21, 2018        BY:   /s/Warren B. Cole
                                                    Warren B. Cole, Esq.
                                                    1138 King Street, Ste. 3
                                                    Christiansted, VI  00820
                                                    Tel.: (340) 773-3535
                                                    Fax: (340) 778-8241
                                                    wbcole@huntercolevi.com