DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| GEC, LLC<br><br>Plaintiff,<br><br>-v.-<br><br>ARGONAUT INSURANCE COMPANY<br><br>Defendant. | 1:18-cv-58-CAK<br><br>**OPINION AND ORDER** |

**AMENDED MEMORANDUM OPINION AND ORDER**

CHERYL ANN KRAUSE, Circuit Judge, sitting by designation.

THIS MATTER comes before the Court on Defendant's Motion to Dismiss (Dkt. No. 26) the Plaintiff's First Amended Complaint (Dkt. No. 18). For the reasons set forth below, the Court will DENY Defendant's Motion to Dismiss.

**FACTUAL BACKGROUND**[1]

This case arises out of a contract dispute relating to the construction of an affordable housing development on St. Croix. First Amended Compl. (FAC) ¶ 5. Plaintiff GEC, LLC ("GEC"), the general contractor for the project, retained Alpha Technologies Services, Inc. ("Alpha") to design and construct an electrical generation system (the "Microgrid") to "provide off-the-grid continuous electrical service" to the development. *Id.* ¶¶ 6–8, 11.

---

[1] In ruling on Defendant's Motion to Dismiss, we accept Plaintiff's well-pleaded factual allegations as true and draw all reasonable inferences in its favor. *See Sherwin-Williams Co. v. Cnty. of Delaware*, 968 F.3d 264, 269 (3d Cir. 2020), *cert. denied*, 141 S. Ct. 2565 (2021); *Fischbein v. Olson Rsch. Grp., Inc.*, 959 F.3d 559, 561 (3d Cir. 2020). Thus, these facts are taken from Plaintiff's First Amended Complaint.

1

Defendant Argonaut Insurance Company ("Argonaut") issued a Performance Bond in the penal sum of $1.652 million as surety for Alpha's performance. *Id.* ¶ 21. Construction of the Microgrid apparently did not go as planned, *see id.* ¶¶ 24, 30, and Alpha's alleged failure to timely deliver an operational Microgrid is the subject of ongoing litigation before this Court. *See Alpha Energy v. GEC, LLC*, No. 1:17-cv-00015-CAK-EAH (filed Mar. 20, 2017). In response to Alpha's alleged failures, GEC connected the development to the local utility's power grid and paid for commercial electrical service instead. *Id.* ¶ 31.

In light of these challenges, GEC told Argonaut that it was considering a declaration of default on January 27, 2017, *id.* ¶ 32, and then issued a notice of default and termination on July 23, 2018, *id.* ¶ 33. But Argonaut responded with a letter (the "denial letter") denying any liability under the Performance Bond and refusing to pay GEC. *See id.* ¶ 35; Dkt. No. 28-2. This lawsuit followed.

## PROCEDURAL HISTORY

GEC initiated this action on November 21, 2018, Dkt. No. 1, and filed the operative First Amended Complaint on February 8, 2019, Dkt. No. 18. In that single-count complaint, it claims that Argonaut violated the implied covenant of good faith and fair dealing when it refused to pay under the performance bond. FAC ¶ 36. Argonaut has moved to dismiss the First Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 26. It attached as Exhibit B to its motion the denial letter. Dkt. No. 28-2.

36                          **DISCUSSION**[2]

37    **A.      Applicable Law**

38         **1.      Motion to Dismiss**

39         In evaluating Argonaut's Motion to Dismiss, this Court must determine whether the

40 First Amended Complaint states a claim for relief under Rule 8(a). It does so "when the

41 plaintiff pleads factual content that allows the court to draw the reasonable inference that

42 the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

43 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

44         **2.      Converting a Motion to Dismiss into a Motion for Summary Judgment**

45         To resolve a Rule 12(b)(6) motion, a court "must consider only the complaint,

46 exhibits attached to the complaint, matters of public record, as well as undisputedly

47 authentic documents if the complainant's claims are based upon these documents." *Mayer*

48 *v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citation omitted). Federal Rule of Civil

49 Procedure 12(d) requires a district court to convert a motion to dismiss into a motion for

50 summary judgment if "matters outside the pleadings are presented to and not excluded by

51 the court." Fed. R. Civ. P. 12(d). In that instance, "[a]ll parties must be given a reasonable

52 opportunity to present all the material that is pertinent to the motion." *Id.*

---

[2] The Court has diversity jurisdiction under 28 U.S.C. § 1332. According to GEC's First Amended Complaint, there is complete diversity between the parties. GEC is a limited liability company organized under the laws of the Virgin Islands, where it has its principal place of business and where all of its members reside. FAC ¶ 2. Alpha is a corporation organized under Nevada law with its principal place of business in Washington, *id.* ¶ 3, and Argonaut is a corporation organized under Illinois law with its principal place of business in Texas, *id.* at ¶ 4.

Conversion therefore is unnecessary when documents submitted in support of or opposition to a motion to dismiss are "integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted). The rationale for this exception is that "the primary problem raised by looking to documents outside of the complaint—lack of notice to the plaintiff—is dissipated where the plaintiff has actual notice . . . and has relied upon these documents in framing the complaint." *Id.* (quotation omitted).

### 3. Implied Covenant of Good Faith and Fair Dealing

Under Virgin Islands law, a claim for breach of the implied covenant of good faith and fair dealing has three elements: "that '(1) a valid contract exists between the parties, and (2) acts committed by the [defendant] amount to fraud or deceit or an unreasonable contravention of the parties' reasonable expectations under the contract;' and (3) that 'damages suffered as a result.'" *Dukes v. Fay Servicing, LLC*, No. 3:18-cv-0064, 2022 WL 16855409, at *4 (D.V.I. Nov. 10, 2022) (quoting *Arvidson v. Buchar*, 71 V.I. 277, 336 (Super. Ct. 2019)). The implied covenant of good faith and fair dealing is present in every contract governed by Virgin Islands law. In the Virgin Islands, "no special [contractual] language is required as it is well established . . . that the duty of good faith implicitly arises from the creation of a contract." *Id.* (citation omitted).

### B. Analysis

#### 1. Conversion to a Motion for Summary Judgment Is Unnecessary

In its opposition to the Motion to Dismiss, GEC suggests that because Argonaut's denial letter was not incorporated by reference into the First Amended Complaint, the

Court must treat the motion as a motion for summary judgment. Opp. at 3. However, that is not necessary if the letter is an indisputably authentic[3] document that is "integral to . . . the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426; *see supra* Section A.2.

To be integral, a document need not be cited in the complaint; "what is critical is whether the claims in the complaint are 'based' on [the] extrinsic document." *In re Burlington Coat Factory*, 114 F.3d at 1426 (citations omitted). So long as the court is considering the fact of the document and not, when contested, "the truth of facts in" it, there is no need to convert the motion into a motion for summary judgment. *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022). Thus, in a case alleging sex discrimination by a college in the application of its sexual misconduct policy, the school investigator's report on the underlying alleged misconduct was integral to the complaint. *Doe v. Univ. of Scis.*, 961 F.3d 203, 208 (3d Cir. 2020). On the other hand, a company's updates and press releases describing its sale of certain assets were not integral to a complaint alleging that those transactions violated federal securities laws because the suit was ultimately based on the allegedly-fraudulent transactions, not the updates or press releases themselves. *See Schmidt v. Skolas*, 770 F.3d 241, 249–50 (3d Cir. 2014).

Here, although the First Amended Complaint does not mention the means Argonaut used to communicate it, its claims are premised on the allegation that Argonaut "wrongfully denied any liability to GEC under the Performance Bond," FAC ¶ 35, and the denial letter is simply the document through which Argonaut communicated that decision

---

[3] GEC does not object to the denial letter's authenticity. *See* Opp. 2–3.

to GEC. That the denial letter is not incorporated by reference is thus beside the point, *see* Opp. 3; the question is whether the denial letter is integral to GEC's claim, which it clearly is. There is also no unfair surprise to GEC, which plainly was on notice of the letter. *See In re Burlington Coat Factory*, 114 F.3d at 1426. GEC contends that Argonaut "makes a factual argument based on the contents of the [denial] letter," Opp. 3, because "even a cursory review of [the denial letter and the Performance Bond] indicates that" it did not breach, Mot. 6. But to the extent that the Court is considering the letter at all at this stage, it is for the fact of the denial, not for the truth of its contents. *See Doe*, 30 F.4th at 342. Accordingly, there is no need to convert Argonaut's Motion to Dismiss into a motion for summary judgment.

### 2. GEC May State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Under the Performance Bond

Having confirmed that Federal Rule of Civil Procedure 12 still governs Argonaut's motion, the Court now turns to the merits of its arguments.

Argonaut first asserts that, due to the differences between suretyship and insurance, there is no bad faith claim available. Mot. 7–8. In support of that view, Argonaut points the Court to various cases in which district courts declined to recognize claims for the tort of bad faith against sureties. *See, e.g.*, *Intercon Constr., Inc. v. Williamsport Mun. Water Auth.*, No. 4:07-CV-1360, 2008 WL 239554, at *3 (M.D. Pa. Jan. 28, 2008) (holding that plaintiffs could not assert a cause of action against a surety for bad faith breach of an insurance obligation under a Pennsylvania statute, which sounded in tort); *U.S. ex. rel. SimplexGrinnell, LP v. Aegis Ins. Co.*, No. 1:08-CV-01728, 2009 WL 90233, at *3–5 (M.D.

Pa. Jan. 14, 2009) (same); *Deluxe Bldg. Sys., Inc. v. Constructamax, Inc.*, Civ. No. 06–2996 (GEB), 2011 WL 322385, at *3 (D.N.J. Jan. 31, 2011) (holding that "New Jersey law does not . . . recognize a cause of action for 'bad faith' breach of a surety bond").

That argument, however, misapprehends the gravamen of GEC's First Amended Complaint. GEC does not assert the bad-faith tort claim that these cases declined to recognize in the surety context. Instead, GEC raises a contract claim. That is, it alleges that "Argonaut wrongfully denied any liability to GEC under the Performance Bond," *see* FAC ¶ 35, that this breach was "deliberate[]," "intentional[]," and "dishonest," and that Argonaut violated the "implied covenant of good faith and fair dealing," *id.* ¶ 36.[4] Unlike a tort action for "bad faith breach of an insurance policy," *Deluxe Bldg. Sys.*, 2011 WL 322385, at *3, breach of the implied covenant of good faith and fair dealing sounds in contract. Even the Pennsylvania and New Jersey courts on which Argonaut relies acknowledge that distinction. *See VSI Sales, LLC v. Int'l Fid. Ins. Co.*, Civ. Action No. 15-507-GMS, 2015 WL 5568623, at *2 n.1 (D. Del. Sept. 22, 2015) (observing that Pennsylvania does not recognize either the tort of bad faith or breach of the implied covenant of good faith and fair dealing against sureties, but that Delaware would); *Alden Leeds, Inc. v. QBE Specialty Ins. Co.*, No. A-2034-14T1, 2015 WL 4507151, at *10 (N.J. Super. Ct. App. Div. July 27, 2015) ("We note that Leeds's bad faith claim [against its

---

[4] This confusion may have arisen from how GEC amended its complaint. The original Complaint alleged that Argonaut's refusal to pay "was a breach . . . and was in bad faith," without making clear that bad faith alleged related to the contractual claim of breach of the implied covenant of good faith and fair dealing. Compl. ¶ 36. The First Amended Complaint, on the other hand, plainly alleges a breach of the Performance Bond's implied covenant. FAC ¶ 36.

7

insurer] is couched in terms of a claim for breach of the implied covenant of good faith and fair dealing, rather than the tort of bad faith denial."). And tellingly, Argonaut points to no cases holding that a contractual claim for breach of the implied covenant of good faith and fair dealing, when brought against a surety, is not cognizable.

This Court predicts that the Virgin Islands Supreme Court would recognize this claim. Under Virgin Islands law, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement," *Chapman v. Cornwall*, 58 V.I. 431, 441 (2013) (quoting Restatement (Second) of Contracts § 205 (Am. L. Inst. 1981)),[5] and "claims arising from the duty . . . sound . . . in contract." *Mendez v. Coastal Sys. Dev., Inc.*, Civil No. 2005-0165, 2008 WL 2149373, at *6 (D.V.I. May 20, 2008); *see also Jo-Ann's Launder Ctr., Inc. v. Chase Manhattan Bank, N.A.*, 854 F. Supp. 387, 390 (D.V.I. 1994) (recognizing a cause of action under contract law, per the Restatement, "for breach of the implied duty of good faith and fair dealing in a loan contract between a lender and a borrower"). This implied duty "limits the parties' ability to act unreasonably in contravention of the other party's reasonable expectations," *Chapman*, 58 V.I. at 441 (citations omitted), and remedies a breach with contract damages, *Mendez*, 2008 WL 2149373, at *15.[6] We see no reason to think the Virgin Islands Supreme Court would

---

[5] Because of this authority from the Virgin Islands, a *Banks* analysis to determine how the Virgin Islands Supreme Court would likely rule on the question is unnecessary. *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967 (2011).

[6] Because tort damages are not at issue, it is irrelevant for purposes of this claim whether there is a fiduciary or other special relationship between Argonaut and GEC. *Mendez*, 2008 WL 2149373, at *5–6 (requiring a "special or fiduciary relationship" only in the "narrow exception for tort recovery in a good faith and fair dealing claim").

8

exempt sureties alone from this limitation.

In sum, because the Performance Bond is a contract governed by Virgin Islands law, a claim for breach of the implied covenant in the performance of that contract is cognizable, and the Court will not dismiss GEC's complaint on this ground.

### 3. GEC's First Amended Complaint States a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing

We next consider whether GEC sufficiently pleaded its claim. To state a claim for breach of the implied covenant, GEC must plausibly allege (1) that there was a valid contract with Argonaut, (2) that Argonaut committed "fraud or deceit or an unreasonable contravention of the parties' reasonable expectations," and (3) that GEC incurred damages as a result. *Dukes*, 2022 WL 16855409, at *4 (citation omitted).

The first and last of these requirements are not at issue here. The parties do not dispute the existence of a valid contract under the Performance Bond. *Compare* FAC ¶ 21 (noting Argonaut issued the Performance Bond), *and* Opp. 6 ("The existence of the contract is not disputed."), *with* Mot. 14–15 (contesting whether the First Amended Complaint alleges fraudulent conduct but never disputing the Performance Bond's validity). And GEC's First Amended Complaint plainly alleges, by way of damages, that Argonaut has wrongfully retained $1.652 million owed to GEC. FAC ¶ 21. The only real dispute, then, is whether Argonaut's alleged conduct rises to the level of "fraud or deceit or an unreasonable contravention of the parties' reasonable expectations" under the Performance Bond contract. *Dukes*, 2022 WL 16855409, at *4 (citation omitted).

The allegations in the First Amended Complaint easily meet that standard. *See* FAC ¶¶ 35–36. According to GEC, Alpha failed to build a properly permitted Microgrid on time, *see id.* ¶ 24, causing GEC to have to perform much of the work at its own expense, *id.* ¶¶ 25, 30–31, and GEC complied with the notice provisions in the Performance Bond, *see id.* ¶¶ 32–34. Yet Argonaut—having "deliberately failed to adequately investigate GEC's claim" and "lack[ing] any reasonable or arguable basis" for denying it, *id.* ¶ 36— refused to pay. Contrary to Argonaut's suggestion, *see* Reply Br. 10, these allegations are sufficiently specific to survive a motion to dismiss, *see* Restatement (Second) of Contracts § 205 cmt. d (Am. L. Inst. 1981) (defining bad-faith performance as, among other things, "lack of diligence and slacking off"); *cf. Walsh Constr. Co. II, LLC v. U.S. Sur. Co.*, 334 F. Supp. 3d 282, 299 (D.D.C. 2018) (dismissing a breach of implied covenant in the absence of an allegation that funds were "withheld . . . for any improper purpose").

**4. Consequential Damages Are Available.**

Finally, Argonaut argues that even if GEC's claim can proceed, it cannot claim consequential damages because of any breach. *See* Mot. 16–17. The Court is not persuaded. I reach this conclusion in reliance on the following *Banks* analysis to determine the soundest rule of law for the Virgin Islands. *Banks*, 55 V.I. at 981–84. To conduct this analysis, I must (1) research whether Virgin Islands courts have articulated an on-point rule, (2) analyze what the majority of other courts do, and then (3) determine "most importantly, which approach represents the soundest rule for the Virgin Islands." *Simon v. Joseph*, 59 V.I. 611, 623 (V.I. 2013).

198    First, this Court has not identified, and the parties have not proffered, binding Virgin
199 Islands authority on the availability of consequential damages in cases alleging breach of
200 a performance bond that lacks any language addressing the issue.

201    Second, while courts are split on the question, the majority appear to allow such
202 claims to proceed where, as here, the contract in question does not by its terms deprive
203 either party of the right to consequential damages. As summarized in the Second
204 Restatement of Contracts, under ordinary contract law, when such damages are not
205 expressly excluded, a party in breach (including in breach of the implied covenant of good
206 faith and fair dealing) may be required to compensate the counterparty for such losses to
207 the extent they are foreseeable. *See* Restatement (Second) of Contracts § 347 cmt. a (Am.
208 L. Inst. 1981) ("The measure of damages . . . is subject to the agreement of the parties, as
209 where they provide for liquidated damages . . . or exclude liability for consequential
210 damages."); *id.* § 351 cmt. b ("Loss that results from a breach in the ordinary course of
211 events is foreseeable as the probable result of the breach.").

212    Argonaut urges the mirror-opposite default rule, noting that some cases applying
213 Pennsylvania law have said that sureties will be liable for consequential damages only to
214 the extent the bond itself expressly provides for them. *See* Mot. 16 (citing *Wise Invs., Inc.*
215 *v. Bracy Contracting, Inc.*, 232 F. Supp. 2d 390, 403 (E.D. Pa. 2002) (holding that the
216 surety was "obligated to pay only the costs of performance as provided by the Bond, not
217 all claims [the obligee under the bond] may have against [the bond's principal] such as
218 liquidated damages and attorneys' fees")). But the performance bond at issue there
219 contained language that expressly limited the sureties' financial obligations to, at most, the

contract price "including other costs and damages for which the Surety may be liable hereunder." *Downingtown Area Sch. Dist. v. Int'l Fid. Ins. Co.*, 671 A.2d 782, 786 (Pa. Commw. Ct. 2001) (emphasis removed); *see also Wise*, 232 F. Supp. 2d at 403 (noting that the performance bond there was "materially the same" as in *Downingtown*). The Performance Bond here did no such thing.

Moreover, many other jurisdictions follow the Restatement's rule. *See, e.g.*, *Associated Constr./AP Constr., LLC v. Hanover Ins. Co.*, No. 3:15-cv-1600 (MPS), 2018 WL 3998968, at *14 (D. Conn. Aug. 21, 2018) ("[A] surety's liability for the breach of a contract[], i.e., a surety's exposure when the bond is triggered and the surety performs its obligations under the bond, is distinct from a surety's liability when it breaches the terms of the bond."); *In re New Bern Riverfront Dev., LLC*, 521 B.R. 718, 723 (E.D.N.C. 2014) ("Unlike a surety's liability for breach of its derivative obligations, absent express or implied language in the bond, a surety's liability for breach of its non-derivative, direct obligations may not be limited to the terms of the bond."); *Marshall Contractors, Inc. v. Peerless Ins. Co.*, 827 F. Supp. 91, 95 (D.R.I. 1993) (identifying jurisdictions following this rule and noting that a surety was not necessarily relieved "from liability for consequential damages attributable to its own alleged breach of [its] performance bond" where the "bond ma[de] no provision for consequential damages"); *Hunt v. Bankers and Shippers Ins. Co. of N.Y.*, 73 A.D.2d 797, 798 (N.Y. App. Div. 1979) ("[T]he primary obligation under a performance bond is the surety's promise to be bound to the owner . . . and where the surety fails to perform, it is liable for loss of use of the premises."); *Cont'l Realty Corp. v. Andrew J. Crevolin Co.*, 380 F. Supp. 246, 252 (S.D.W. Va. 1974) (holding

that a surety could be "found liable for a sum in excess of the penal sum of the bond . . . by virtue of its own misconduct"). Based on the above survey, I conclude that the majority of jurisdictions follow the Restatement's rule and allow for consequential damages for breach of a performance bond where the parties have not bargained to exclude them.

Finally, I conclude that the soundest rule of law for the Virgin Islands is the Restatement's rule. As a general matter, Virgin Islands courts have allowed parties to recover damages for "consequential loss [] caused by [a contract] breach." *Creative Minds, LLC v. Reef Broad., Inc.*, No. ST-11-CV-131, 2014 WL 4908588, at *7 n.36 (V.I. Super. Sept. 24, 2014) (citation omitted); *see also Four Winds Plaza Corp. v. Caribbean Fire & Assocs., Inc.*, 48 V.I. 899, 915 (D.V.I. 2007) ("General, special, and consequential damages all qualify as compensatory damages."). Argonaut has not identified any Virgin Islands authority articulating a different rule for sureties. Thus, the soundest rule of law for the Virgin Islands holds that, where the parties have not bargained for an alternate arrangement, even if "a performance bond is not intended to compensate for indirect losses," a surety's "*own* alleged breach of the performance bond" can give rise to liability beyond the bond's penal sum. *Marshall Contractors*, 827 F. Supp. at 95; *see also In re New Bern*, 521 B.R. at 725 ("[A]ny limitation on the recovery of consequential damages arising from a surety's direct liability must be found in the bond itself.").

In sum, because the Performance Bond did not preclude recovery of consequential damages, they are available here.

## CONCLUSION

For the reasons discussed above, the Court DENIES Defendant's Motion to Dismiss.

SO ORDERED.

Dated:   August 28, 2023

/s
CHERYL ANN KRAUSE
United States Circuit Judge